[Civ. No. 660.     Third Appellate District.—November 16, 1909.]

CHARLES W. MOTT, Appellant, v. ISAAC MINOR, Respondent.

BROKER'S COMMISSIONS — PLEADING — SUFFICIENCY OF COMPLAINT.—A complaint in an action to recover broker's commission upon the sale of real estate, under a written contract, which limited no period of service, and promised a ten per cent commission for procuring a buyer at the price fixed, which alleged that plaintiff entered upon the service and procured a buyer at said price sixty-five days after the date of the contract, who was then and there ready, willing and able to pay the price fixed by the contract, and introduced him to the vendor, to whom such proposed purchaser paid a higher price for the land, sufficiently implies that the employment continued to the time of procuring such purchaser, without an express allegation to that effect.

ID.—EVIDENCE ADMISSIBLE UNDER ANSWER—DISPROOF OF CAUSE OF ACTION.—Under an answer specifically denying all of the allegations of the complaint, and averring that the contract was intended as a mere authority at the date to introduce a purchaser then represented as known to the broker, the defendant may show any facts tending to prove that the cause of action never existed; and evidence that prior to the introduction of the purchaser the authority of the plaintiff had been revoked was admissible in disproof of any cause of action.

ID.—NEW MATTER.—It is only when new matter exists as a defense by way of confession of the truth of all the allegations of the complaint and avoidance of the same, for the purposes of such defense, that it must be specially pleaded in order to allow the same to be proved.

ID.—VARIANCE BETWEEN COMPLAINT AND PROOF — PURCHASER NOT FOUND—AGENCY FOR COMPANY.—Where it appears in evidence that the purchaser introduced was not ready or willing to buy the land· for himself, but as agent for a lumber company, which was the real purchaser for the lands, there was clearly a material variance between the complaint and the proof, which defeats the cause of action alleged. The question is not one of authority to act, but of the identity of the would-be purchaser.

ID.—NECESSITY THAT PURCHASER BE FOUND WHO HAS OFFERED TO BUY FROM VENDOR.—The broker, in order to recover his commission, must find a purchaser, who has offered in his own right to purchase the property from the vendor, upon the terms agreed upon, and is ready and willing to pay the same as a purchaser; and he must be held to strict allegation and proof as to who was the intending purchaser, and he cannot prevail upon the theory that he produced the agent of an undiscovered principal.

ID.—SUPPORT OF GENERAL VERDICT.—The general verdict for the defendant is sufficiently supported both by the evidence that plaintiff's authority had been revoked 'before any proposed purchaser was introduced, and by the evidence that no proposed purchaser was found, as alleged in the complaint.

APPEAL from an order of the Superior Court of Humboldt County, denying a new trial.   G. W. Hunter, Judge.

The facts are stated in the opinion of the court.

Arthur H. Barendt, for Appellant.

F. A. Cutler, Geo. D. Murray, and McGowan, Squires & Westlake, for Respondent.

BURNETT, J.—The cause, involving a broker's commission for securing a purchaser for timber land, was tried before a jury and a general verdict was rendered in favor of defendant. The appeal is from an order denying plaintiff's motion for a new trial.

The written instrument which, it is claimed, created the agency is in the form of a letter signed by defendant and in the following language:

"San Francisco, Cal., July 27th, 1903.

"Chas. W. Mott, Esq., San Francisco, Calif.

"Dear Sir: I own about 20,000 acres of sugar and yellow pine land (more or less) situated in Tuolumne County, California, and being located in townships 1 and 2 South, Ranges 18, 19 and 20 East, M. D. M. and will sell the same for twenty dollars per acre. If you procure me a buyer for the above-mentioned tract, or are instrumental in selling same, I hereby agree in consideration of such service, to allow you ten per cent commission on the above price, or any less price that I may agree to accept in the event of a sale being made under within conditions."

The complaint, after alleging the employment of plaintiff by virtue of said written agreement, continues: "That thereupon plaintiff entered upon said service and made every endeavor to procure a buyer for the said land, and his efforts in that behalf were such that on or about October 1, 1903, plaintiff procured one Thomas Friant as a buyer for the said tract of land at the said price and introduced him to the defendant, and informed the defendant that the said Thomas Friant was then and there ready, able and willing to purchase the whole of the said tract of land for the said price, and he, the said Thomas Friant, was then and there able, ready and willing to purchase of the defendant the whole or any part of the said tract of land at the said price of twenty dollars per acre; that the negotiations thus initiated continued, and on or about July 13, 1904, the said Thomas Friant offered the said defendant twenty-three dollars per acre for the said tract of land, and he was then and there able, ready and willing to purchase the said tract of land and pay therefor the said sum of twenty-three dollars per acre to defendant."

The defendant denied "that on the twenty-seventh day of July, 1903, or at any other time, the defendant employed the plaintiff, as a broker or otherwise, to sell for him certain or any real estate, except as hereinafter stated; that is to say, that at the time last mentioned, the said plaintiff represented and asserted to the said defendant that he had secured a purchaser for the lands and premises referred to and mentioned in the said complaint, and that if he had some instrument to show his authority to make a sale therefor to the

said intending purchaser, he, the said 'plaintiff, would be in a better position to consummate a sale, and thereupon for the purpose of showing the authority of the said plaintiff, as aforesaid and not otherwise, the said defendant made and executed the instrument set forth in the complaint herein.'' All the other allegations of the complaint are specifically denied.

The first contention of appellant is that the court erred in admitting evidence of the rescission of the plaintiff's authority as agent for defendant. It is said in the brief: ''The answer does not disclose any such defense as cancellation. There is no general denial in the answer. It is, in fact, a confession and avoidance, and admission that the contract was made and a denial of its apparent intent, coupled with a denial that plaintiff performed the services so as to entitle him to the commissions for which he sues.'' It is urged, therefore, that the cancellation was new matter, and should have been pleaded in accordance with the rule laid down in Bliss on Code Pleading, second edition, page 519, as follows: ''It has been supposed by some that the defendant should still be permitted, under the code, to prove any facts, under a denial merely, which admit it was invalid. But it has been shown that the defendant is at liberty, without having especially pleaded them, to give evidence of facts only which tend to disprove the facts alleged and denied—that is, to disprove their existence as facts, and not the liability they create. The permission goes no further. The rule has been thus stated: 'A general traverse under the code authorizes the introduction of no evidence except such as tends directly to disprove some fact alleged in the complaint.' Whenever a defendant intends to rest his defense upon any fact which is not included in the allegations necessary to the support of the plaintiff's case he must set it out. 'The general rule is that any fact which avoids the action, and which the plaintiff is not bound to prove in the first instance in support of it, is new matter; but a fact which merely negatives the averments of the petition is not new matter and need not be replied to.' ''

Upon reflection it will appear that defendant has brought himself clearly within the rule as announced in the foregoing quotations. In order to prevail it was necessary for plaintiff to show two things; first, that he secured a purchaser for the

land, and second, that when he did so he was the duly authorized agent of the defendant for that purpose. It is clear that unless these two circumstances concurred no cause of action existed. The complaint, it is true, does not specifically allege that plaintiff's authority continued till the time when the offer was made, but this is nevertheless admittedly a material factor and it does at least inferentially appear. Otherwise the complaint would be fatally defective. The complaint, as we have seen, alleges that on the twenty-seventh day of July, 1903, the defendant employed the plaintiff to sell the property and thereupon plaintiff entered upon said service and procured one Thomas Friant as a buyer. While not very clearly stated, we think the complaint necessarily implies that the purchaser was secured while plaintiff was in the service as broker of defendant. At any rate, it is conceded that this is the scheme of the complaint, and the evidence to the effect that plaintiff's authority had been canceled, in other words, that he was not in the service of defendant at the time mentioned, goes directly to the foundation of plaintiff's claim. The evidence tended thus to show that no cause of action ever existed in favor of plaintiff, and was as clearly admissible as evidence negativing plaintiff's authority in the first instance, or any other material fact denied by the answer. There can be no controversy about the rule, concerning which the authorities are agreed. It is succinctly stated by Prof. Pomeroy (sec. 549, sec. *673, Code Remedies, 4th ed.) as follows: "Any facts which tend to disprove some one of the material allegations of the complaint may be given in evidence under the denial; any fact which does not thus directly tend to disprove some one or more of these allegations cannot be given in evidence under the denial. It follows that if such fact is in itself a defense, or, in combination with others, aids in establishing a defense, this defense must be based upon the assumption, that so far as it is concerned, all the material allegations made by the plaintiff are either admitted or proven to be true. The facts which constitute or aid in constituting such a defense are 'new matter.' " (See, also, *Landis* v. *Morrison*, 69 Cal. 83, [10 Pac. 258]; *Heaten* v. *Arper*, 145 Cal. 284, [78 Pac. 721].)

The point is also made by respondent that the objection to the evidence was not sufficiently specific to raise the question

which we have been considering. There is merit in the contention, but as it seems clear to us that the evidence was admissible, the form of the objection becomes unimportant.

It is claimed that "there is not a scintilla of testimony to show that Mr. Friant was not able, ready and willing to buy the defendant's lands at the contract price of $20 per acre." It is sufficient to say that plaintiff in his testimony did not claim that Friant was to be the purchaser of the land. Although he was so introduced, plaintiff declares that "Mr. Friant was a member of the White & Friant Lumber Company. . . . That it was the company that wanted to buy the lands. Nothing was said about his company. Mr. Friant at all times was acting for the White & Friant Lumber Company. They were the ones that wanted to purchase the lands." Considering the whole record, it is therefrom apparent that said Friant was not able and willing to buy said land, but he was acting for an undisclosed principal. There was clearly a variance in this respect between the complaint and the proof. It is no answer to say, *"Qui facit per alium facit per se,"* as it is not a question of authority to act, but of the identity of the would-be purchaser. In *Gunn* v. *Bank of California,* 99 Cal. 352, [33 Pac. 1106], it is said: "It is, of course, well settled that when a broker employed simply to negotiate a sale of real estate has found a purchaser able, ready and willing to purchase upon the vendor's terms, his right to the agreed commission is complete, and does not depend upon the final acceptance by the purchaser of a conveyance of the property sold. . . . But the question here is: What is *finding* or *producing* a purchaser within the meaning of the rule of law declared in this and the other cases cited? Is it sufficient for a broker to merely find a person financially able, and who verbally agrees with him to purchase upon the terms of the vendor and makes a deposit, but who neither signs a binding agreement to purchase upon such terms nor is produced before the vendor as a person ready and willing to enter into such a contract? It seems to us very clear that this question must be answered in the negative. The contract of the broker is to negotiate a sale; that is, to procure a valid contract to purchase, which can be enforced by the vendor if his title is perfect; or if he does not procure such contract, to bring the vendor and the proposed

purchaser together, that the vendor may secure such a contract, unless he is willing to trust to an oral agreement." The case of *Hayden* v. *Grillo,* 35 Mo. App. 647, is quoted to the same effect, wherein it is said: "But the necessity of a written contract of sale may be rendered unnecessary if the agent bring the vendor and vendee together, and the latter is able and willing and offers to complete the contract provided the vendor will make the conveyance." The same doctrine is declared in *Mattingly* v. *Pennie,* 105 Cal. 519, [45 Am. St. Rep. 87, 39 Pac. 202], and it is held that "The readiness and willingness of a person to purchase the property can be shown only by an offer on his part to purchase; and unless he has actually entered into a contract binding him to purchase or has offered *to the vendor* and not merely to the broker to enter into such a contract, he cannot be considered a purchaser."

As the question of *readiness* and good faith are important factors in a case of this kind, it is no more than reasonable that a plaintiff should be held to strict proof in reference to the purchaser, and where the real party in interest is not disclosed to the vendor, the broker should not be allowed to prevail upon the theory that he has produced the agent of the undiscovered principal.

But aside from the foregoing, the general verdict of the jury finds support in the evidence that plaintiff's authority had been canceled before the purchaser was found.

The finding that plaintiff was not in the service of defendant would render immaterial the other consideration as to the purchaser. A finding as to either against plaintiff would obviously support a judgment in behalf of defendant.

Complaint is made also that the court instructed the jury that in order for plaintiff to recover it was incumbent upon him, under the allegations of the complaint, to establish the fact that Thomas Friant made an offer to the defendant to purchase the land at the sum of at least $20 per acre, and that if the jury found from the evidence that Thomas Friant did not offer the defendant the sum of at least $20 per acre, then they should find for the defendant, ignoring the defendant's "refusal to enter into any negotiations with the buyer by peremptorily announcing, immediately on meeting the buyer, that he would not sell at the figure named." One

of these instructions given by the court was: "I charge you that the readiness or willingness of a person to purchase property can be shown only by an offer on his part to purchase, and unless you find from the evidence that plaintiff procured a purchaser who offered to purchase all the land described in the agreement, then I charge you that there was no sufficient offer made to the defendant, and you must find a verdict for said defendant." This instruction really follows the allegations of the complaint, but it is claimed by appellant that it was not necessary to show an offer in view of defendant's peremptory refusal to sell. Many authorities are cited to the effect that the broker is entitled to the commission when he has procured a purchaser able, ready and willing to purchase, therefore holding by implication, so it is claimed, that it is not necessary to prove an offer in order to recover.

However, there seems to be a difference between a bilateral contract binding both parties and a unilateral promise like the one here. This is pointed out in the Mattingly case, *supra,* wherein it is said on page 520 of 105 Cal., [45 Am. St. Rep. 87, 39 Pac. 202], that "Counsel for plaintiff contend that the evidence showed that Blythe unequivocally refused to perform his contract; and they claim that under section 1512 of the Civil Code, his refusal to perform entitled plaintiff to all the benefits which he would have obtained if the contract had been performed by both parties. Such is not the law. In some cases of bilateral contracts a refusal on the part of one party to perform the contract has been held to amount to a prevention of performance by the other party. But where, as here, the contract is unilateral, the party to whom the promise is made cannot recover without proof of performance of the condition upon which the promise depends; and in such a case a mere refusal by the promisor to perform, or even an entire repudiation by him of the contract, does not of itself amount to prevention." This must be especially so where, as here, the purchaser was not introduced or made known to the defendant. If he is to be bound by the action of a third party representing an undisclosed principal, there ought at least to be a *bona fide* offer to purchase on the part of said representative.

But again, the theory of the complaint is that the negotiations were initiated on October 1st and that they continued, and on or about July 13, 1904, an offer was made of $23 per acre. According to the allegations of the complaint, therefore, the cause of action was not complete till the latter date and defendant at any time prior thereto had a right to terminate the agency. But it is admitted that on March 30th preceding, defendant addressed a letter to plaintiff, which the latter admits he received, revoking the authority of plaintiff to sell the property. Hence it would seem that if the instruction as to the ''offer'' was erroneous, it was without prejudice, as the relation of agency had been terminated.

The closing brief of appellant is devoted to the contention that the evidence is insufficient to show that defendant canceled plaintiff's authority prior to October 1, 1903. In view of the foregoing allegation of the complaint as to July 13, 1904, it would seem to be immaterial whether the authority was canceled prior to said October 1st, but it may be observed that defendant and his daughter so testified, and hence it cannot be asserted that a finding to that effect would be unsupported.

We think there is no prejudicial error in the record and the order denying the motion for a new trial is affirmed.

Hart, J., and Chipman, P. J., concurred.