Filed 4/4/25  Ko v. Choi CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOO MO KO et al., <br><br> Plaintiffs, Cross-Defendants and Appellants, <br><br> v. <br><br> JONG SUK CHOI et al., <br><br> Defendants, Cross-Complainants and Respondents. | B328608 <br><br> Los Angeles County <br> Super. Ct. No. 19STCV40062 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

Park & Lim, S. Young Lim, Dennis McPhillips and Jessie Y. Kim for Plaintiffs, Cross-Defendants and Appellants.

Steven C. Kim & Associates, Steven C. Kim and Gabriel Colorado for Defendants, Cross-Complainants and Respondents.

The parties to this appeal belong to separate factions that are vying for control of a local Presbyterian church. At the time the parties' governance dispute arose, the church belonged to a larger religious organization. The highest court of that organization resolved the dispute in favor of respondents. Nevertheless, appellants filed a complaint in the superior court seeking a declaration that their faction represents the "true" church. According to appellants, they are not bound by the religious court's determination because the church voted to leave the larger organization before the religious court issued its decision. Following an eight-day bench trial, the superior court determined the church had not withdrawn from the larger religious organization. The court entered judgment for respondents and declared that they occupy leadership positions within the church.

On appeal, appellants contend the trial court's statement of decision is inconsistent with a prior superior court order, which they assert conclusively establishes that the church left the larger religious organization. Appellants also argue the trial court misinterpreted the church's governing documents and violated the United States Constitution by failing to defer to them on matters of religious doctrine. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case concerns a dispute over control of the Korean Western Presbyterian Church of Los Angeles (the Church). The Church is a Korean-speaking Presbyterian church, and it owns real property in Los Angeles that is worth as much as $10 million.

In 2019, the Church members split into two factions, both claiming to represent the true Church. The majority

2

of Church members—including the individual respondents—belong to a faction led by Rev. Jong Suk Choi.[1]  A minority of members—including the appellants—belong to a faction led by Rev. Joo Mo Ko.[2]  Although the designations are not entirely accurate, for the sake of simplicity, we refer to the appellants and respondents as the "Ko Faction" and the "Choi Faction," respectively.

**1.      *The Church history and structure***

The Church was founded in 1972 as an independent Presbyterian church.  A few times over the years, the Church has joined and withdrawn from larger religious organizations.  The parties disagree about whether the Church belonged to any of those larger organizations in late 2019.

a.      *The World Korean Presbyterian Church*

In 2014, the Church joined a larger religious organization called the World Korean Presbyterian Church (WKPC).  The Choi Faction contends the Church has never left the WKPC, while the Ko Faction contends the Church left the organization in November 2019.

The WKPC is a hierarchical organization governed by a constitutional document called the Book of Church Order (BOCO).  The WKPC's hierarchy consists of three levels of governing bodies, which are sometimes referred to as "courts."

---

[1]      The respondents are Rev. Jong Suk Choi aka Olaf J. Choi, Elder Nathanael Yun, Chang Rok Kim, Samuel Kim aka Seung Gon Kim, the Western Presbytery of the Hapdong in USA, and World Korean Presbyterian Church.

[2]      The appellants are Rev. Joo Mo Ko, Elder Bong Kyu Kim, and Rev. Myung Chul Ra.

At the lowest level of the hierarchy, each local church is governed by a "session," which consists of the church's pastor and its ruling elders. The pastor of the church is the "moderator" of the session, which is a position akin to the chair of a board of directors.

At the next level of the hierarchy is the "presbytery." A presbytery has authority to resolve property disputes, appoint interim pastors, and impose discipline on pastors, elders, and members of the local churches under its jurisdiction. The LA Presbytery and the California Presbytery are two WKPC presbyteries that are relevant to this case.

The General Assembly is the highest body in the WKPC's hierarchy. A member who disagrees with a presbytery's resolution of a dispute may appeal the decision to the General Assembly. The General Assembly's decisions are final and binding on all members.

As we discuss below, the Choi Faction contends the Church has never left the WKPC, while the Ko Faction contends the Church left the organization in November 2019.

b.      *The Western Presbytery of the Hapdong*

In 2018, the Church joined another religious organization called the Western Presbytery of the Hapdong (the Hapdong Presbytery). The Hapdong Presbytery is the regional governing body of a larger organization based in Korea called the Presbyterian Church in Korea (PCK). The BOCO expressly allows dual membership in the WKPC and the PCK.

The Choi Faction contends the Church has never left the Hapdong Presbytery. The Ko Faction contends the Church left the organization in March 2019.

4

## 2. *Events leading up to the litigation*

### a. *Rev. Ko and Rev. Choi join the Church*

In April 2018, LA Presbytery requested that the Hapdong Presbytery remove the Church's senior pastor, Rev. Gun Ho Seo. The Hapdong Presbytery complied with the request, after which the LA Presbytery appointed Rev. Ko as the Church's interim senior pastor.[3]

Upon Rev. Ko's appointment as the Church's senior pastor, the Church's session (the Session) consisted of Rev. Ko (as moderator), Elder Kim, and Elder Yun. Rev. Ko and Elder Kim belong to the Ko Faction. Elder Yun belongs to the Choi Faction.

About a month after Rev. Ko's appointment as senior pastor, Rev. Choi joined the Church as an associate pastor.

### b. *The Church considers a merger*

For reasons not relevant to this case, the Church's membership decreased dramatically around the time Rev. Ko and Rev. Choi joined the Church. In an attempt to resolve the financial issues caused by the decline in membership, Elder Yun spearheaded an effort to merge the Church with another church called LA Open Door Presbyterian Church (LA Open Door). At the time, both the Church and LA Open Door were members of the WKPC. However, the Church was governed by the LA Presbytery, while LA Open Door was governed by the California Presbytery. Under the proposed terms of the merger, the pastor of LA Open Door (Rev. Park) would become the senior pastor of the merged church, effectively replacing Rev. Ko in that position.

---

[3] The parties seem to agree that the Hapdong Presbytery had authority to remove Rev. Seo.

5

### c.   *Elder Yun tries to replace Rev. Ko*

The proposed merger stalled after a court entered a multi-million dollar judgment against LA Open Door.  Nevertheless, Elder Yun remained determined to remove Rev. Ko from his position as the Church's senior pastor.  Elder Yun sent letters to the LA Presbytery requesting that it replace Rev. Ko with Rev. Choi.  After receiving no response, Elder Yun sent a letter to the Hapdong Presbytery asking it to do the same.  The Hapdong Presbytery complied with Elder Yun's request, and on October 29, 2019, it passed a resolution appointing Rev. Choi as interim senior pastor of the Church.  Since that date, the Choi Faction has claimed to represent the true Church.

### d.   *Elder Kim and Elder Yun leave the Session*

The Ko Faction refused to recognize the Hapdong Presbytery's appointment of Rev. Choi as the Church's senior pastor.  On October 31, 2019, Rev. Ko and Elder Kim called a special meeting of the Session.  They did not provide notice of the meeting to Elder Yun, despite the fact that he was a member of the Session.

At the special meeting of the Session, Rev. Ko and Elder Kim dismissed Rev. Choi from the Church.  They also dismissed Elder Yun from the Session for "illegally" petitioning the Hapdong Presbytery to remove Rev. Ko.

After voting to remove Elder Yun, Elder Kim decided to resign his position on the Session.  Accordingly, the evening of October 31, 2019, Elder Kim gave Rev. Ko his letter of resignation.

e.     *The LA Presbytery Executive Committee appoints new Session members*

The next day—November 1, 2019—five members of the Executive Officers Committee of the LA Presbytery met to appoint new members to the Church's Session.  The majority of the committee members who attended the meeting belong to the Ko Faction:  Rev. Ko, Rev. Ra, and Rev. Paul Choi.[4]

At that meeting, the committee expelled Rev. Choi from the LA Presbytery.  The committee also appointed Rev. Ra and Rev. Paul Choi to fill the vacant seats in the Session that had previously been filled by Elder Yun and Elder Kim.

f.     *The Choi Faction votes to join the California Presbytery*

On November 3, 2019, members of the Choi Faction and LA Open Door physically blocked members of the Ko Faction from entering the Church property to hold services.  As we discuss later in this opinion, the Ko Faction subsequently claimed it dismissed and excommunicated the Church members who participated in the blockade.

Two days later—on November 5, 2019—members of the Choi Faction purported to hold a congregational meeting.  At that meeting, the members voted to leave the LA Presbytery and join the California Presbytery.  Rev. Choi sent the LA Presbytery notice of the Church's decision to withdraw from the organization.

---

[4]     Rev. Choi and Rev. Paul Choi are different people and belong to different factions.

### 3. *The Ko Faction causes the Church to file a complaint against the Choi Faction*

The next day—November 6, 2019—the Ko Faction caused the Church to file a complaint against the Choi Faction.[5] The complaint alleged the Choi Faction was attempting to make LA Open Door the de facto owner of the Church's property and to use the Church as a shell for the purposes of avoiding enforcement of the judgment against LA Open Door. According to the complaint, the Choi Faction tried to take control of the Church by falsely claiming the Church is a member of the Hapdong Presbytery and that Rev. Choi is the Church's senior pastor. Among other forms of relief, the complaint sought a declaration that the Church has the power to own, possess, control, and manage the Church's property in exclusion of the Choi Faction.

### 4. *The California Presbytery appoints Rev. Choi as interim senior pastor of the Church*

On November 8, 2019, the California Presbytery appointed Rev. Choi as interim senior pastor of the Church, replacing Rev. Ko in that position.

### 5. *The court grants a temporary restraining order and issues an order to show cause*

On November 15, 2019, the trial court—the Hon. James C. Chalfant—issued a temporary restraining order enjoining the Choi Faction from interfering with the Church's possession, control, and management of the Church's property. The court

---

[5] The complaint named as defendants Rev. Choi, the Hapdong Presbytery, LA Open Door, and LA Open Door's pastor, Rev. Park.

issued an order to show cause and set a hearing to consider issuing a preliminary injunction.

**6.      *Factions vie for control of the LA Presbytery***

At the same time the Ko Faction and Choi Faction were vying for control of the Church, two competing factions were vying for control of the LA Presbytery.

On November 18, 2019, one of those factions—led by Rev. Ko—held a special meeting of the LA Presbytery.  At that meeting, the faction expelled the moderator of the LA Presbytery and appointed Rev. Ko in his place.  The faction also ratified the Executive Committee's November 1 resolutions expelling Rev. Choi from the LA Presbytery and expelling Elder Yun from the Church Session.

The other faction of the LA Presbytery held a meeting five days later, on November 23, 2019.  At that meeting, the faction expelled Rev. Ko and Rev. Ra from the LA Presbytery and disciplined several other members of the Ko Faction.  The faction found Rev. Ko and Rev. Ra had filed a lawsuit to try to take control of the Church's property, submitted false documents to the court, and held an illegal meeting on November 18, 2019.

**7.      *Members of the Ko Faction submit declarations in support of the request for a preliminary injunction***

On December 5, 2019, the Ko Faction caused the Church to file a brief in support of its request for a preliminary injunction.  Rev. Ko and Elder Kim submitted declarations in support of the request, which they signed under penalty of perjury on December 4, 2019.  In those declarations, Rev. Ko and Elder Kim each asserted that "*since November 1, 2019 to date, the session consists of Ko, Ra, and [Paul] Choi*."  (Original italics and underscoring.)  As we discuss below, Rev. Ko and Elder Kim

9

later contradicted their sworn declarations by claiming the Session had been dissolved on November 17, 2019.

**8.** ***The court grants the Church's request for a preliminary injunction***

On January 16, 2020, the trial court—Judge Chalfant—issued a preliminary injunction enjoining the Choi Faction from interfering with the Church's possession, control, and management of its property. The court stated the case turned on whether the Hapdong Presbytery had authority to appoint Rev. Choi as the Church's interim pastor. The court determined the evidence "shows that [the] Church is governed by the LA Presbytery and is not a member of the [Hapdong Presbytery]. Consequently, no action by or on behalf of the [Hapdong Presbytery] has any bearing on the control and management of Church Property." The court also found the Church had demonstrated the November 5, 2019 congregational meeting—at which members of the Choi Faction voted to leave the LA Presbytery and join the California Presbytery—"was not properly noticed and convened as required by [the] BOCO."

**9.** ***The Ko Faction causes the Church to file for bankruptcy***

On February 14, 2020, the Ko Faction caused the Church to file a petition for bankruptcy in the Central District of California. The filing of the bankruptcy petition automatically stayed the Church's lawsuit in the superior court.

Over the Ko Faction's objection, the bankruptcy court granted the Choi Faction's motion to lift the automatic stay to allow the superior court to resolve the parties' governance dispute. The court found the Ko Faction had filed the bankruptcy case in bad faith and had "engaged in very questionable tactics."

It noted the Ko Faction had been pressing for the immediate sale of the Church's property, apparently to fund its litigation and "disrupt the Choi Faction's ability to conduct services . . . and obtain collections from worshipers." The court appointed a neutral trustee to control the Church's property while the parties litigated the governance dispute in the superior court.

**10.    *The General Assembly resolves the dispute in favor of the Choi Faction***

In June 2020, the WKPC General Assembly held its annual meeting. At that meeting, the General Assembly sided with the Choi Faction and made the following resolutions: (1) the LA Presbytery properly removed and expelled Rev. Ko and Rev. Ra on November 23, 2019 for attempting to steal the Church's property; (2) the meetings of the LA Presbytery on November 1, 7, and 18, 2019—at which it purported to expel Rev. Choi and Elder Yun and appoint members of the Ko Faction to the Session—were illegal and any resolutions reached at the meetings are void; (3) the Church legally withdrew from the LA Presbytery and joined the California Presbytery; (4) the California Presbytery properly appointed Rev. Choi as interim senior pastor; and (5) Elder Yun remains a member of the Session. The General Assembly also requested that the Church dismiss this lawsuit against the Choi Faction as soon as possible.

**11.    *The Ko Faction files the first amended complaint***

Instead of complying with the General Assembly's request to dismiss this lawsuit, on August 6, 2020, the Ko Faction caused the Church to file the operative first amended complaint (FAC). While the original complaint was concerned primarily with a property dispute, the FAC was concerned primarily with

11

a governance dispute between the Ko Faction and the Choi Faction.[6]

The FAC alleged the General Assembly's June 2020 resolutions were not binding because the Church had withdrawn from the WKPC several months earlier. According to the FAC, on November 9, 2019, the Session called for a special congregational meeting on November 17, 2019. The Session announced the meeting to the congregation in the November 10th weekly worship bulletin. At the November 17th meeting, nine of the Church's 10 regular members were present. Those members voted to withdraw from the WKPC, appoint Rev. Ko as senior pastor of the Church, and operate the Church as an independent Presbyterian church.

12. ***The Ko Faction files a motion under Corporations Code section 9418***

In January 2021, the Ko Faction caused the Church to file a motion under Corporations Code section 9418, asking the court to determine "the validity of the Church's Board of Directors consisting of Plaintiffs [Rev.] Ko, [Elder] Kim, and [Rev.] Ra in conformity with its Articles of Incorporation . . . and its Bylaws." According to the motion, since withdrawing from the WKPC on November 17, 2019, the Church has been governed by a Board of Directors (the Board), rather than the Session. The motion asserted Rev. Ko and Elder Kim were the original members of the Board. On November 17, 2019, they held a special meeting at which they appointed Rev. Ra to join them on the Board.

---

[6] The Ko Faction later dismissed LA Open Door and Rev. Park as defendants.

12

The Choi Faction opposed the motion, asserting it improperly asked the court to determine which faction represents the true Church. According to the Choi Faction, the General Assembly had resolved that issue in favor of the Choi Faction at its June 2020 annual meeting, and the court is bound by the General Assembly's decision.

The Choi Faction asserted the Ko Faction had fabricated the November 17, 2019 congregational meeting after it became clear the General Assembly would rule in favor of the Choi Faction. The Choi Faction pointed out that none of the declarations the Ko Faction filed in December 2019 mentioned the November 17, 2019 congregational meeting or the fact that the Church had withdrawn from the WKPC. The Choi Faction also submitted declarations from 31 Church members stating they did not receive notice of the November 17, 2019 congregational meeting.

On April 8, 2021, the trial court issued a 16-page decision concluding, "[Rev.] Ko, Elder Kim, and [Rev.] Ra were duly elected or appointed to the Board (Session)." We refer to that decision as the section 9418 order. The court cautioned that its decision was extremely limited. According to the court, the decision did not address whether the Church withdrew from the WKPC or which faction represents the true Church. As we discuss later in this opinion, the section 9418 order has been the source of considerable confusion in this case.

**13.** *The Choi Faction files a cross-complaint*

In May 2021, the Choi Faction filed a cross-complaint against the Ko Faction. The cross-complaint alleged the trial court is bound by the General Assembly's June 2020 determination that members of the Choi Faction are the

13

legitimate leaders of the Church. Among other forms of relief, the cross-complaint sought declarations that, since October 2019, Rev. Choi has been the true senior pastor of the Church and the Session has been comprised of members of the Choi Faction.

**14.** *The trial*

The parties tried their claims before the court—the Hon. Monica Bachner—over the course of eight days in August 2022. The Ko Faction presented testimony from Rev. Ko, Rev. Ra, Elder Kim, and Elder Yun. The Choi Faction did not call any witnesses.[7]

Rev. Ko and Elder Kim testified that, on November 3, 2019, members of the Choi Faction blocked members of the Ko Faction from conducting services on Church property. In response, the Session held a special meeting later that day. At the time, Rev. Ko and Elder Kim were the only two members of the Session.[8] At the special meeting, the Session dismissed and expelled 16 members of the Church for interfering with the Church services earlier that day.

The Ko Faction entered into evidence a document purporting to be the minutes of the November 3 Session meeting. The document states the Session "has resolved to dismiss and expel the church members, who interrupted the services of this

---

[7] Because the record of trial is voluminous, we summarize only the evidence directly relevant to the issues in this appeal.

[8] Rev. Ko and Elder Kim acknowledged that Elder Kim submitted a letter of resignation from the Session on October 31, 2019. However, they claimed he rescinded his resignation the next day, shortly after the LA Presbytery Executive Committee appointed Rev. Ra and Rev. Paul Choi to the Session.

church . . . pursuant to Chapter 8 (Session), Article 5 (Duties of Session), Item 2 (Admission and withdrawal as church member) and Item 6 (Discipline) of the [BOCO], as of November 3, 2019." The document lists 16 people who were dismissed and expelled from the Church, and 10 people who remained members of the Church.

Rev. Ko admitted he did not try to summon any members to the Session before expelling them. He explained that the Session had authority to dismiss and excommunicate those members summarily because, under the BOCO, "if someone interferes with service or tries to separate, one can take immediate action."

Rev. Ko testified that the Session held another special meeting on November 9, 2019. At that meeting, the Session resolved to convene a special congregational meeting on November 17, 2019 to withdraw from the WKPC.

Rev. Ko testified that he provided notice of the special congregational meeting to Church members in the Church bulletins on November 10 and 17, 2019. He also announced the meeting during the service on November 10. Rev. Ko admitted he did not give notice of the congregational meeting to the members of the Church who were following Rev. Choi.

According to Rev. Ko and Elder Kim, nine of the 10 members of the Church attended the November 17 congregational meeting. All nine members voted to leave the WKPC.

15.    *The court enters judgment for the Choi Faction*

In January 2023, the court issued a final statement of decision finding in favor of the Choi Faction. The court concluded the Ko Faction failed to meet its burden of proving the Church

15

is not subject to the control and authority of the WKPC. Instead, the preponderance of the evidence supports the Choi Faction's contention that the Church "did not sever its relationship with WKPC in November 2019 or at any time thereafter and [the Church] is still a member of WKPC."

The court noted Judge Chalfant made a "binding determination that, as of November 17, 2019, the Board consisted of Plaintiffs [Rev.] Ko, [Rev.] Ra, and [Elder] Kim." Nevertheless, the court determined the November 17, 2019 congregational meeting—at which the Church purportedly withdrew from the WKPC—was not "valid as it did not include members of the congregation that had been excommunicated on November 3, 2019, without following the procedures set forth in the [BOCO]. [Citation.] The [BOCO] does not include a summary excommunication procedure, but rather required the session to summon the offender and witnesses. [Citations.] Accordingly, the Ko faction did not give notice of the November 17, 2019 Congregational meeting to the improperly expelled members. [Citation.] Accordingly, assuming the 10 members of the Ko faction were present, there was not a quorum. The Court finds that the November 17, 2019 congregational meeting was not properly called, noticed and convened in compliance with the [BOCO]. Accordingly, the November 17, 2019 resolutions ceasing the affiliation with WKPC, calling Rev. Ko as Senior Pastor, and establishing [the Church] as an independent Presbyterian church were not valid."

The court entered judgment against the Ko Faction on the FAC and in favor of the Choi Faction on the cross-complaint. The judgment declares the following: (1) the Church is a member of the WKPC and subject to its control and authority;

16

(2) Rev. Choi replaced Rev. Ko as senior pastor of the Church on October 29, 2019; and (3) Rev. Choi and Elder Yun are the only members of the Session.

The Ko Faction appealed.

## DISCUSSION

The Ko Faction challenges the trial court's determination that the Church did not withdraw from the WKPC on November 17, 2019. According to the Ko Faction, the court's determination is inconsistent with Judge Chalfant's section 9418 order, which conclusively establishes the November 17, 2019 congregational meeting was valid and the Church withdrew from the WKPC at that meeting. The Ko Faction also argues the trial court erred in finding the congregational meeting was not called, noticed, and convened in compliance with the BOCO.

1.     ***The statement of decision is not inconsistent with the section 9418 order***

Corporations Code section 9418 provides, in relevant part, "[u]pon the filing of an action therefor by any director or member [of a corporation], . . . the superior court of the proper county shall determine the validity of any election or appointment of any director of any corporation." (Corp. Code, § 9418, subd. (a).) The court must set an expedited hearing to consider the issue (*id.*, subd. (b)), and it "may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, . . . and may direct such other relief as may be just and proper" (*id.*, subd. (c)).

Before trial, the Ko Faction filed a motion under Corporations Code section 9418 asking the court to determine "the validity of the Church's Board of Directors consisting of Plaintiffs [Rev.] Ko, [Elder] Kim, and [Rev.] Ra in conformity

17

with its Articles of Incorporation . . . and its Bylaws." The court ultimately granted the motion, concluding, "[Rev.] Ko, Elder Kim, and [Rev.] Ra were duly elected or appointed to the Board (Session)."

According to the Ko Faction, the court's conclusions in the section 9418 order can be true only if the Church withdrew from the WKPC on November 17, 2019. Therefore, the court must have implicitly found the November 17, 2019 congregational meeting was valid and the Church withdrew from the WKPC on that date. The Ko Faction contends those implicit findings are conclusive, and it urges us to reject the statement of decision to the extent it is inconsistent with them.

Although the section 9418 order purports to be a limited decision on a narrow issue, it has been the source of a great deal of confusion in this case. Much of that confusion stems from the fact that the order does not clearly indicate when the court is making factual findings, and when it is merely summarizing the evidence and arguments presented to it. Adding to the confusion, the order seems to use the terms "Board" and "Session" interchangeably, without regard for the significant legal implications of the court's choice of terms. This imprecision makes it difficult to ascertain precisely what legal and factual findings the court intended to make.

That being said, we agree with the Ko Faction that some of the court's conclusions—particularly those related to Rev. Ra —seem to imply that the Church withdrew from the WKPC. For example, the Ko Faction's motion asserted Rev. Ko and Elder Kim appointed Rev. Ra to the Board during a special Board meeting on November 17, 2019. In granting the motion, it seems the court must have accepted the Ko Faction's

18

assertions, as there was no evidence that Rev. Ra had been appointed at some other time. As the Ko Faction points out, had the Church not withdrawn from the WKPC on November 17, 2019, it would have been governed by the Session, not the Board. Therefore, the court's conclusion that Rev. Ra had been duly appointed to the Board seems to imply that the Church validly withdrew from the WKPC.

The court's conclusions related to Rev. Ra also seem to imply that the Ko Faction controlled the Church as of November 17, 2019. Had the Choi Faction controlled the Church on that date, Rev. Ko would not have been a member of the Board or the Session. Therefore, he would not have had the authority to call a special meeting or appoint Rev. Ra to any leadership position within the Church. Thus, it would seem Rev. Ra's appointment is valid only if the Ko Faction represented the true Church as of November 17, 2019.

Although the Ko Faction's contentions have some logical and textual support, we are confident the court did not intend to resolve the governance dispute or decide whether the Church validly withdrew from the WKPC. In a section of the order entitled "Scope of the Section 9418 Trial," the court plainly stated it would not resolve "the validity of the Church's November 17, 2019 withdrawal from WKPC or the WKPC General Assembly's June 2020 ratification of the removal and expulsion of Ko and Ra, and of Choi's installation as Church's pastor." In another section of the order, the court reiterated that it would not address the existence of the November 17, 2019 congregational meeting, the validity of its notice, or whether the General Assembly removed Rev. Ko, Elder Kim, and Rev. Ra from their leadership positions.

19

The court stated those issues are "hotly disputed and must be addressed in the main trial."

It is very difficult to square the court's explicit statements regarding the order's limited scope with the broad implications of its conclusions. On the one hand, the court explicitly stated it would not address whether the Church left the WKPC or which faction controls it. On the other hand, the court confirmed the validity of Rev. Ra's appointment to the Board, which would seem to be true only if the Church validly withdrew from the WKPC under the Ko Faction's governance.

We see no obvious way to resolve the conflict between the court's explicit statements and its implied findings. Of the two, we have more confidence in our understanding of the court's explicit statements regarding the limited scope of its order. Indeed, given the order's ambiguity, it is possible we have fundamentally misunderstood the court's findings and conclusions. Therefore, to the extent the court's explicit statements conflict with its implicit findings, we will follow the explicit statements. Accordingly, we reject the Ko Faction's contention that the section 9418 order conclusively establishes that the Church withdrew from the WKPC on November 17, 2019. We also reject any suggestion that the order resolves the parties' underlying governance dispute.

**2.** ***The trial court did not prejudicially err in finding the November 17, 2019 congregational meeting was not properly called, noticed, and convened***

In its statement of decision, the trial court concluded the preponderance of the evidence shows the Church did not leave the WKPC on November 17, 2019 because the purported congregational meeting was not properly called, noticed, and

20

convened. The court reasoned that, a few weeks before the congregational meeting, the Ko Faction purported to dismiss and excommunicate 16 members of the Church, who made up a majority of the congregation at the time. The court found the Ko Faction failed to summon the members before dismissing and excommunicating them, as required under BOCO Chapter 8, Article 5, Item 6 (BOCO Item 6).[9] The court explained that, because the 16 members were not properly excommunicated and dismissed, they were entitled to participate in the November 17, 2019 congregational meeting. The Ko Faction, however, did not give those members notice of the meeting, nor did they attend it. Therefore, the court concluded, the Ko Faction did not properly call, notice, or convene the November 17, 2019 congregational meeting, rendering invalid any decisions made at that meeting.

The Ko Faction argues the trial court erred to the extent it found the congregational meeting was not properly called, noticed, or convened. The Ko Faction asserts its failure to comply with BOCO Item 6 is irrelevant because it had independent authority to dismiss Church members under BOCO Chapter 8, Article 5, Item 2 (BOCO Item 2). BOCO Item 2 states, in relevant part, the "session shall examine people for communicant membership, urge communicant parents to present their children for baptism, examine baptized children to see if they are ready

---

[9] BOCO Item 6 provides, in relevant part, the "session shall summon the offender[s] and the witness[es] among the church members for investigation . . . . Where there is clear evidence of the offense, the session should rebuke, reprimand, suspend, keep from the communion table, dismiss from the church roll, or excommunicate the unrepentant, as appropriate, and lift discipline on the penitent."

to receive communion, receive and issue letters of transfer for those who have moved . . . , and even dismiss members." According to the Ko Faction, the phrase "even dismiss members" granted the Session the authority to dismiss summarily any Church member for any reason.

The Ko Faction further contends the trial court was required to defer to the Session's decision to dismiss members under BOCO Item 2. According to the Ko Faction, the Session's authority to dismiss members under that provision is a "purely ecclesiastical matter" that requires an extensive inquiry into religious law, governance, and administration of the Church. Moreover, the question of who should be a communicant member of the Church is a question of religious law and administration. Therefore, the United States Constitution precluded the trial court from second guessing the Session's decision to dismiss members under BOCO Item 2. Thus, the Ko Faction contends, the trial court erred to the extent it relied on the improper dismissal of members to conclude the November 17, 2019 congregational meeting was invalid.

We will assume, for the sake of argument, that the trial court erred to the extent it found the Ko Faction failed to comply with the BOCO when it dismissed the 16 Church members. Nevertheless, reversal is not required, because the Ko Faction has not met its burden to show the error was prejudicial. (See Cal. Const., art. VI, § 13 [a judgment cannot be set aside unless "the error complained of has resulted in a miscarriage of justice"]; *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833 ["Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred."].)

22

As the Ko Faction correctly points out, the First and Fourteenth Amendments to the United States Constitution limit a state court's authority to decide matters of religious law. In *Serbian Eastern Orthodox Diocese, etc. v. Milivojevich* (1976) 426 U.S. 696, for example, the United States Supreme Court reversed a state court decision setting aside a church's defrocking of a bishop.  The state court held the defrocking was arbitrary and invalid because the church did not comply with its internal regulations.  (*Id*. at p. 698.)  In reversing the state court's decision, the United States Supreme Court explained the "fallacy fatal to the judgment of the [state court] is that it rests upon an impermissible rejection of the decisions of the highest ecclesiastical tribunals of this hierarchical church upon the issues in dispute, and impermissibly substitutes its own inquiry into church polity and resolutions based thereon of those disputes. . . . For where resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them." (*Id*. at pp. 708–709.)

California courts also have held civil courts must not "entangle themselves in disputes over church doctrine or infringe on the right to free exercise of religion."  (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 478.)  Instead, civil courts must "defer to the position of the highest ecclesiastical authority that has decided the point." (*Id*. at p. 485.)  "Ecclesiastical matters" subject to deference "include not only issues of religious doctrine

23

per se, but also issues of membership, clergy credentials and discipline, and church polity and administration." (*New v. Kroeger* (2008) 167 Cal.App.4th 800, 824 (*Kroeger*).) Moreover, the "question of which faction represents the 'true' church entitled to [church] property is an ecclesiastical matter in which civil courts may not meddle." (*Metropolitan Philip v. Steiger* (2000) 82 Cal.App.4th 923, 925 (*Metropolitan Philip*); see *Huber v. Jackson* (2009) 175 Cal.App.4th 663, 678 (*Huber*) [pronouncement that some group of individuals is the true church is an ecclesiastical matter].)

There are limited exceptions to the rule of judicial deference on ecclesiastical matters. For example, state courts may apply neutral principles of law to resolve internal church disputes over ownership of church property. (*Episcopal Church Cases, supra*, 45 Cal.4th at p. 485.) In doing so, "[t]he court should consider sources such as the deeds to the property in dispute, the local church's articles of incorporation, the general church's constitution, canons, and rules, and relevant statutes." (*Ibid*.) However, "if resolution of a property dispute involves a point of [religious] doctrine, the court must defer to the position of the highest ecclesiastical authority that has decided the point." (*Ibid*.; see *Kroeger, supra*, 167 Cal.App.4th at p. 817 ["if resolution of a religious dispute determines the control or possession of the property at issue, the sectarian authority's decision is not subject to judicial review"].)

*Kim v. The True Church Members of Holy Hill Community Church* (2015) 236 Cal.App.4th 1435 (*Kim*) is instructive, and its facts are remarkably similar to this case. *Kim* involved a dispute between two factions vying for control of a Korean-speaking Presbyterian church that owned valuable real estate

24

in Los Angeles.  The church's presbytery—the Western California Presbytery (WCP)—appointed the appellants to leadership positions within the church.  However, the WCP later removed the appellants from those positions and replaced them with the respondents.  The appellants reacted by calling a congregational meeting at which they purported to withdraw the church from the WCP.  The WCP, in turn, excommunicated the appellants and determined the congregational meeting was illegal.  The parties filed civil claims against each other, and the trial court eventually entered judgment in favor of the respondents. (See *id.*, at pp. 1441–1444.)

On appeal, the appellants argued the trial court erred by deferring to the WCP's decisions.  (*Kim, supra*, 236 Cal.App.4th at p. 1448.)  The appellants asserted the trial court should have found the WCP lacked authority over them because they had validly seceded from the organization.  (*Id.* at p. 1449.) The Court of Appeal rejected the appellants' arguments and affirmed the judgment.  (*Id.* at p. 1441.)  The court noted that, "[w]hen a property dispute between two religious groups is susceptible to the application of neutral principles of law, it is proper for the civil courts to apply those principles to the dispute, rather than deferring to the adjudicatory bodies of the relevant ecclesiastical organizations."  (*Id.* at p. 1446.)  However, that exception to the general rule of ecclesiastical deference did not apply because the parties' disputes concerned church governance, not church property.  (See *id.* at p. 1448.)  The court concluded "the ecclesiastical rule of judicial deference to the highest authority within a hierarchical church on questions of church governance and church membership requires that we defer to the WCP's decision that appellants' vote to secede did not comply

25

with BOCO, and that the WCP had authority to intervene." (*Id*. at p. 1449.)

Here, the Ko Faction's appeal focuses on the validity of the November 17, 2019 congregational meeting and the Church's purported withdrawal from the WKPC. Those issues, however, can be traced back to a fundamental dispute over Church governance. The undisputed evidence shows that dispute arose on October 29, 2019, when the Hapdong Presbytery purported to appoint Rev. Choi as senior pastor of the Church, replacing Rev. Ko. The California Presbytery followed suit on November 8, 2019. Since then, the Ko Faction and the Choi Faction each claim to represent the true Church.

The Ko Faction does not contest that the ecclesiastical rule of judicial deference applies to the parties' governance dispute. Nor could it, as the dispute concerns issues of church governance and membership, and its resolution requires inquiry into religious law and polity. Accordingly, we must defer to the highest authority within the Church's hierarchy to have resolved the dispute. (See *Episcopal Church Cases, supra*, 45 Cal.4th at p. 485; *Kim, supra*, 236 Cal.App.4th at p. 1449; *Kroeger, supra*, 167 Cal.App.4th at p. 824; *Metropolitan Philip, supra*, 82 Cal.App.4th at p. 925; *Huber, supra*, 175 Cal.App.4th at p. 678.)

On that issue, the undisputed evidence shows the Church was a member of the WKPC from 2014 until at least November 17, 2019. Accordingly, there is no question the Church was a member of the WKPC when the parties' governance dispute arose. Nor is there any question that the WKPC is a hierarchical religious organization and the General Assembly is the highest authority within that hierarchy.

Therefore, to the extent the General Assembly resolved the parties' governance dispute, we must defer to its decision.

The Choi Faction maintains the General Assembly resolved the parties' dispute by confirming the Hapdong Presbytery's October 29, 2019 appointment of Rev. Choi as the Church's senior pastor. Although the Ko Faction does not directly contest that point, the record on the issue is not entirely clear.

Nevertheless, there is no question that the General Assembly determined at its June 2020 annual meeting that the California Presbytery properly appointed Rev. Choi as the Church's interim senior pastor. That appointment occurred on November 8, 2019. Under Chapter 8, Article 3 of the BOCO, "[t]he pastor of the local church, by virtue of his office, is the moderator of the session." Therefore, under the General Assembly's decision, Rev. Choi became senior pastor of the Church and moderator of the Session no later than November 8, 2019.

The Ko Faction does not meaningfully contest that the General Assembly resolved the parties' governance dispute at its June 2020 annual meeting. Instead, it suggests the decision is not binding because the Church withdrew from the WKPC on November 17, 2019. However, the Ko Faction provides no authority—civil or religious—to support its implicit assertion that it could escape the General Assembly's jurisdiction by leaving the WKPC after the parties' dispute had already arisen. Absent such authority, we must defer to the General Assembly's determination that Rev. Choi became the Church's senior pastor and moderator of the Session no later than November 8, 2019. That determination conclusively resolves the parties' governance dispute in favor of the Choi Faction.

27

The General Assembly's decision also defeats the Ko Faction's arguments related to the November 17, 2019 congregational meeting. We are bound by the General Assembly's determination that Rev. Choi became Session moderator no later than November 8, 2019, and it is undisputed that there can be only one moderator of a session at a given time. Therefore, we are compelled to conclude that any actions Rev. Ko purported to take as moderator of the Session after November 8, 2019—including calling the November 9, 2019 special Session meeting and the November 17, 2019 congregational meeting— are ineffectual. Thus, we must conclude the Church did not withdraw from the WKPC, regardless of whether the Ko Faction complied with the BOCO when it dismissed the 16 Church members on November 3, 2019. Accordingly, to the extent the trial court erred in determining the Ko Faction failed to comply with BOCO Item 6, the error is harmless and does not require reversal of the judgment.[10]

---

[10] To the extent the Ko Faction makes other arguments related to the statement of decision, they fail for the same reason.

**DISPOSITION**

We affirm the judgment. Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


HANASONO, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.